UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-cv-61565-BLOOM/Otazo-Reyes

JUNIOR GALETTE,

    Plaintiff,
v.

ROGER GOODELL, *et al.*,

    Defendants.
_____/

## ORDER ON MOTIONS TO DISMISS

**THIS CAUSE** is before the Court upon the Motion to Dismiss filed by Defendants the Cleveland Browns, Kansas City Chiefs, Seattle Seahawks, Washington Commanders, and Roger Goodell, ECF No. [15] ("First MTD"); the Motion to Dismiss filed by Defendants the Carolina Panthers, Las Vegas Raiders, and Los Angeles Rams, ECF No. [24] ("Second MTD"); and the Motion to Dismiss filed by Defendant the National Football League Players Association ("NFLPA"), ECF No. [29] ("Third MTD" or "NFLPA's MTD"). As discussed below in Part II.B, the Court deems the Motions to be fully briefed. The Court has considered the Motions, the supporting and opposing filings, the record, the applicable law, and is otherwise fully advised. For the reasons stated below, Defendants' Motions are granted in part and denied in part.

**I.    BACKGROUND**

    **A.  The Complaint**

On August 23, 2022, Plaintiff Junior Galette filed his Complaint against Roger Goodell, the National Football League ("NFL"), the NFLPA, and the seven NFL teams listed above. ECF No. [1]. Therein, he alleges that he was a football player with the team formerly known as the Washington Redskins, currently known as the Washington Commanders. *Id.* ¶ 10. Galette, who is

Black, alleges that he was offered a mere "2 year 4 Million Dollar Contract 500k signing bonus" in 2018, which he deemed insufficient when compared to a "3 year 22.5 Million Dollar Deal" offered to Galette's former White teammate, who, according to Galette, is a less valuable player. *Id*. ¶¶ 10, 11, 12, 16.

On March 17, 2018, Galette posted a complaint on social media complaining about the Washington Commanders' offer. *Id.* ¶ 15. He wrote: "I swear to god I'm not playing for no slave deals I'll die before I play for more slave deals." *Id.* at 46. Five days later, the Washington Commanders revoked Galette's offer. *Id.* ¶ 16.

Galette was then offered a "veteran's minimum 660k" contract with the Oakland Raiders. *Id.* ¶ 18. He "continue[d] to search for better offers[.]" *Id.* ¶ 19.

Galette alleges that he eventually decided to sign with the Los Angeles Rams. *Id.* ¶ 22. However, the Los Angeles Rams subsequently informed him "there's been a change of plans," and the deal was off. *Id.* ¶¶ 24, 26. Galette thereafter discussed playing with the Seattle Seahawks, the Cleveland Browns, the Indianapolis Colts,[1] the Carolina Panthers, and the Kansas City Chiefs, but none of those teams signed him. *Id.* ¶¶ 28-32.

Galette alleges that the reason no team signed him was because he was blacklisted by the NFL owners for speaking out about the Washington Commanders' discrimination against him. *Id.* ¶¶ 55-56.

Galette asserts violations of the 1866 Civil Rights Act (Count I), his Freedom of Speech rights (Count II), and a provision of the NFL-NFLPA Collective Bargaining Agreement ("CBA") (Count III). *Id.* ¶¶ 62-64. He seeks $300,000,000.00 in damages. *Id.* ¶ 65.

---

[1] The Indianapolis Colts is the only team in this paragraph that is not named as a Defendant in Galette's Complaint.

### B. The Motions to Dismiss

On October 18, 2022, the Cleveland Browns, Kansas City Chiefs, Seattle Seahawks, Washington Commanders, and Roger Goodell filed the First MTD. ECF No. [15]. They argue that (a) Galette's Complaint fails to state a claim for relief, (b) this case is estopped by a prior arbitration proceeding, (c) Galette's claim for breach of the CBA must be arbitrated, and (d) Defendant Roger Goodell was not properly served. *Id.* They seek dismissal of this action with prejudice. *Id.* at 15.

On October 28, 2022, the Carolina Panthers, Las Vegas Raiders, and Los Angeles Rams filed the Second MTD, which joined, adopted, and incorporated by reference the First MTD. ECF No. [24]. The Las Vegas Raiders additionally argued that it should be dismissed due to insufficient service of process. *Id*.

On October 31, 2022, Galette filed a Response to the Second MTD. ECF No. [26]. Therein, Galette reasserts the claims within his Complaint, alleges that he never received the First MTD that was filed on October 18, 2022, contests the Las Vegas Raiders' assertion that it was not served, *id.* at 1-5, and accuses the Carolina Panthers, Las Vegas Raiders, and Los Angeles Rams of "displaying unclean hands and bad faith." *Id.* at 6 (capitalization removed).

On November 3, 2022, the Defendants who filed the First and Second MTDs jointly filed a Reply to Galette's Response to the Second MTD. ECF No. [27]. They argue that Galette failed to meaningfully respond to the arguments within the First MTD and incorporated into the Second MTD. *Id*. at 1. To rebut Galette's argument that he never received the First MTD, the Reply points out that Galette had consented to receive filings through the Court's CM/ECF system to his email address. *Id.* at 2 (citing ECF No. [5]). Defendants attached to their Reply a Notice of Electronic Filing generated by the Court's CM/ECF system, which shows that Notice of the First MTD was sent to the email address Galette provided. ECF No. [27-1] at 2.

3

On November 3, 2022, Defendant NFLPA filed the Third MTD. ECF No. [29]. Similar to the prior MTDs, the NFLPA's MTD argues that Galette's Complaint fails to state a claim for relief, Galette is estopped from relitigating claims that were resolved in arbitration, and the NFLPA was not properly served. *Id.* at 1-16. The NFLPA seeks dismissal of Galette's Complaint with prejudice. *Id.* at 22. The NFLPA's MTD includes a Declaration from David L. Greenspan, which explains that the NFLPA was attaching the CBA at issue in Count III of Galette's Complaint, and the arbitrator's decision in *Galette v. Nat'l Football League, et al* as Exhibits 1 and 2. *See* ECF No. [29-1] (Declaration of David L. Greenspan), [29-2] (CBA), [29-3] (Summary Judgment Motion Opinion and Order in *Galette v. Nat'l Football League*).

On November 7, 2022, Galette filed a document entitled "Responsive Pleading Declaration of David L. Greenspan," ECF No. [36], which the Court construes as a Response in opposition to the NFLPA's MTD. Therein, Galette argues that the CBA created a duty for the NFLPA to protect him from discrimination, but the NFLPA failed to do so. *Id.* at 2-3. He further argues that the arbitrator's decision "is not applicable to this matter[.]" *Id.* at 4-5. Galette reiterates that he never received the First MTD and was therefore deprived of due process. *Id.* at 6.

On November 14, 2022, the NFLPA filed a 4-page Reply in support of its MTD, arguing that Galette's Response fails to rebut the NFLPA's arguments for dismissal. ECF No. [38]. Galette then filed a 31-page response to the NFLPA's Reply, which generally contests the grounds for dismissal stated in the NFLPA's MTD. *See generally* ECF No. [39]. Galette's 31-page filing is procedurally improper because it is effectively an unauthorized sur-reply and it exceeds the 20-page limit for memoranda of law. *See* S.D. Fla L.R. 7.1(c)(1) (requiring leave of Court for a memorandum of law in response to a Reply); *id.* at (c)(2) (setting a 20-page limit for all memoranda of law). The Court had previously advised Galette that his *pro se* status does not excuse him from compliance with the Local Rules. *See* Order Providing Instructions to *Pro Se* Litigant, ECF No.

4

[8]. Despite being procedurally improper, the Court has considered Galette's filing in rendering its decision.

## II.     LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Additionally, a complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. If the facts satisfy the elements of the claims asserted, a defendant's motion to dismiss must be denied. *Id.* at 556.

When reviewing a motion to dismiss, a court, as a general rule, must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012); *AXA Equitable Life Ins. Co. v. Infinity Fin. Grp., LLC*, 608 F. Supp. 2d 1349, 1353 (S.D. Fla. 2009) ("On a motion to dismiss, the complaint is construed in the light most favorable to the non-moving party, and all facts alleged by the non-moving party are accepted as true."). A court considering a Rule 12(b) motion is generally limited to the facts contained in the complaint and attached exhibits, including documents referred to in the complaint that are central to the claim. *See Wilchombe v. TeeVee Toons, Inc.*, 555 F.3d 949, 959 (11th Cir. 2009). While the court is required to accept as true all

allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555.

## III. DISCUSSION

The Court begins with Galette's assertion that he never received notice of the First MTD, then addresses Defendants' collateral estoppel argument, and concludes with a claim-by-claim analysis of Galette's Complaint.

### A. Galette's Notice of the First MTD

Galette alleges that he was denied due process because he never received a copy of the First MTD. *See* ECF Nos. [26] at 3, [36] at 6. However, Galette's allegation is belied by the automatic notification produced by the CM/ECF system, which shows that notice of the First MTD was emailed to Galette on October 18, 2022, the same day it was filed. ECF No. [27-1] at 2. Galette had previously consented to receive notice via the CM/ECF email notification system, and he accepted responsibly for verifying that his computer and network were not filtering emails sent from that system. *See* ECF No. [5] at 1. In its Order Providing Instructions to *Pro Se* Litigant, the Court reiterated that, having consented to use of the CM/ECF system, Galette would not receive copies of filings from the Court or opposing counsel. ECF No. [8] at 2. Lastly, the Court notes that Galette indisputably became aware of the First MTD's existence on October 28, 2022, in time to file a Response to the First MTD or move for an extension of time to do so. *See* ECF No. [26] at 3. For all these reasons, the Court rejects Galette's argument that he has been deprived of due process for not having received the First MTD.

### B. Defendants' Collateral Estoppel Argument

Defendants contend that at least some of Galette's claims are subject to collateral estoppel due to a prior arbitration decision between Galette and the Defendants. A prior arbitration precludes a party from relitigating factual issues resolved in arbitration when: "(1) the issues in

this action are identical to those alleged in the arbitration; (2) these issues were actually litigated in the arbitration; and (3) the arbitration panel's determination of these issues was a critical and necessary part of the arbitration decision." *Freecharm Ltd. v. Atlas Wealth Holdings Corp.*, 499 F. App'x 941, 943 (11th Cir. 2012). "Although res judicata is an affirmative defense that is properly raised under Federal Rule of Civil Procedure 8(c)(1), a party may raise it in a Rule 12(b)(6) motion to dismiss where the defense's existence can be judged on the face of the complaint." *Harrell v. Bank of Am., N.A.*, 813 F. App'x 397, 400 (11th Cir. 2020) (quotation marks omitted).

Defendants argue that all of the *Freecharm* preclusion factors are satisfied here because Galette litigated at least some of the claims within his Complaint in the prior arbitration proceeding, which resulted in a 40-page decision in favor of the NFL and its teams. ECF Nos. [15] at 12, [29] at 17.

The problem with Defendants' estoppel argument is that they have failed to demonstrate that the Court should consider the prior arbitration decision at this stage in the proceeding. In resolving a motion to dismiss, the Court must limit its "consideration to the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *LaGrasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004).

Unlike the CBA, the prior arbitration decision is not "central to or referenced in the [C]omplaint." *Id.* The NFLPA argues that Galette's prior arbitration is central to Galette's claims "as it involves the same set of facts and issue Mr. Galette attempts to litigate here." ECF No. [29] at 10 n.4 (citing *Rosen v. J.M. Auto Inc.,* No. 07-cv-61234, 2008 WL 9901501, at *5 (S.D. Fla. Mar. 6, 2008)). However, the issue of "centrality" does not turn on the similarity of the facts and issues between the two proceedings. Rather, "[t]he centrality of a document may be shown where the document is a necessary part of an effort to prove a claim for relief." *Wilson v. GAF*, No. 19-

7

cv-01915, 2020 WL 12602222, at *3 (N.D. Ala. June 25, 2020) (citing *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005)).

Here, the Complaint does not mention the prior arbitration proceeding, which occurred after the events underlying Galette's claims, and does not give rise to any of those claims. The fact that the arbitration proceeding addressed some of those events does not render it "central" to Galette's Complaint. The single case cited by the NFLPA – *Rosen* – undermines the NFLPA's position. The *Rosen* court refused to consider documents that defendants attached to their motion to dismiss, because, among other reasons, those documents were not attached to, cited by, or relied upon by the complaint. 2008 WL 9901501, at *5. Here too, "[n]one of [Galette]'s claims arise in any way out of the arbitration decision," so that decision is not "central" to Galette's Complaint. *Wilson*, 2020 WL 12602222, at *3.

Nor would it be appropriate for the Court to consider the arbitration decision under the Court's ability to "take judicial notice of state and federal court records of prior proceedings, as well as its own records." *See Harrell v. Bank of Am., N.A.*, 813 F. App'x 397, 400 (11th Cir. 2020). The First MTD cites one case in which this Court considered a prior arbitration decision at the MTD stage. ECF No. [15] at 13 (citing *Vital Pharms. v. PepsiCo, Inc.*, 528 F. Supp. 3d 1295, 1301-03 (S.D. Fla. 2021)). However, in that case, the prior arbitration order had been "confirmed by this Court." *Vital Pharms.*, 528 F. Supp. 3d at 1299. It was therefore an appropriate exercise of judicial notice. Here, by contrast, the prior arbitration was unknown to this Court and does not constitute a state or federal court record. The prior arbitration decision does not appear to be a public record, since, according to the Defendants, "proceedings before the System Arbitrator are confidential." ECF No. [15] at 5 n.5. The Court will not take judicial notice under those circumstances.

Accordingly, the Court finds that Defendants have failed to demonstrate that the Court should consider the arbitration decision at this early stage of the case. The Court therefore defers consideration of Defendants' collateral estoppel argument.

**C. The Counts Within Galette's Complaint**

As noted above, Galette's Complaint consists of three Counts: the 1866 Civil Rights Act (Count I), Freedom of Speech (Count II), and breach of the CBA (Count III). ECF No. [1] ¶¶ 62-64.

   **1. Count I**

In Count I, Galette alleges violations of the "1866 Civil Rights Act Section 1-2." ECF No. [1] at 17. As an initial matter, it is unclear what statute forms the basis of this claim. Section 2 of the Civil Rights Act of 1866 exists today as 18 U.S.C. § 242, which is "criminal in nature and provide[s] no civil remedies," so it is clearly inapplicable to this case. *Hoffman v. Off. of State Att'y, Fourth Jud. Cir.*, 793 F. App'x 945, 948 n.1 (11th Cir. 2019) (quotation marks omitted). Section 1 is now codified at 42 U.S.C. §§ 1981 and 1982. *State of Ga. v. Rachel*, 384 U.S. 780, 789 n.12 (1966).

The essence of Count I is that Galette's former White teammate was offered a better employment contract than Galette, despite Galette being "equal or better base[d] on stats and productivity alone." ECF No. [1] at 16-17. The Court therefore infers that Galette is attempting to state a claim under 42 U.S.C. § 1981, which provides in relevant part that "[a]ll persons … shall have the same right in every State and Territory to make and enforce contracts[.]" 42 U.S.C. § 1981(a).[2]

---

[2] 42 U.S.C. § 1982, by contrast, addresses deprivations of "real and personal property," which does not appear to be at issue in this case.

Case No. 22-cv-61565-BLOOM/Otazo-Reyes

In order to state a claim under § 1981, a plaintiff must allege facts establishing: (1) that the plaintiff is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1270 (11th Cir. 2004). "[A] plaintiff may establish racial discrimination directly or circumstantially." *Ziyadat v. Diamondrock Hosp. Co.*, 3 F.4th 1291, 1296 (11th Cir. 2021). Reading Galette's *pro se* Complaint generously, *see Hughes v. Lott*, 350 F.3d 1157, 1160 (11th Cir. 2003), Galette has attempted to set forth a circumstantial case of racial discrimination by alleging that, despite being a better player than his former White teammate, he, a Black player, was offered an inferior contract. ECF No. [1] at 16-17.

However, Count I suffers from numerous infirmities. First, to make out a prima facie case of racial discrimination, the plaintiff must point to comparators of a different race who were "similarly situated in all material respects and were not subject to the same mistreatment." *Ziyadat*, 3 F.4th at 1296. "When comparing similarly situated individuals to raise an inference of discriminatory motivation, the individuals must be similarly situated in all relevant respects besides race, since different treatment of dissimilarly situated persons does not violate civil rights laws." *Jackson*, 372 F.3d at 1273. Plaintiff's allegations must "support a reasonable expectation that discovery would reveal evidence that these Defendants acted with racially-discriminatory animus." *Ford v. Strange*, 580 Fed. Appx. 701, 713 (11th Cir. 2014). Galette has failed to allege sufficient facts that would demonstrate that that he and his former White teammate were similarly situated in all relevant respects besides race.

Second, the Complaint fails to allege discriminatory intent, the "critical element" of a Section 1981 claim. *Rutstein v. Avis Rent-A-Car Sys., Inc.*, 211 F.3d 1228, 1234–35 (11th Cir. 2000). Third, it fails to "identity an impaired 'contractual relationship[.]'" *Domino's Pizza, Inc. v.*

McDonald, 546 U.S. 470, 476 (2006) (quoting § 1981(b)). Fourth, it fails to assert that racism was the *but-for* cause of the alleged contract discrimination that occurred. *See Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). Fifth, it fails to specify *which* Defendants discriminated against Galette and the specific discriminatory actions they took. *See, e.g., Benaddi v. Jarvis*, No. 15-cv-2143, 2016 WL 3633010, at *4 (M.D. Fla. July 7, 2016) (dismissal when complaint "d[id] not point to specific actions" of defendants "that were intentionally discriminatory based on [plaintiff's] race"); *Norris v. O'Connor*, No. 16-cv-214, 2017 WL 924475, at *3 (M.D. Ga. Mar. 8, 2017) (dismissal when complaint merely asserted that defendants "discriminated against him based on his race") (cleaned up).

In sum, Count I is deficient in many respects and subject to dismissal. Although *pro se* Plaintiffs are generally afforded leave to amend, such leave "need not be granted when amendment would be futile." *Wooden v. Armenteros*, 756 F. App'x 951, 953 (11th Cir. 2018). "If the issue of futility is close, we err on the side of generosity to the plaintiff." *Id*. Because the Court cannot conclude that Count I's deficiencies are unsurmountable, the Court gives Galette leave to amend Count I.

### 2. Count II

In Count II, Galette alleges violations of his "freedom of speech" rights protected by Section 4 of the Florida Constitution and the "Constitution of Virginia." ECF No. [1] at 17. The substance of this Count is that Galette's rights were violated by the NFL teams' alleged decision(s) not to hire Galette because he "spoke out about discrimination and social justice[.]" *Id*.

Like Count I, Count II suffers from a lack of specificity in that it does not identify which Defendant(s) allegedly violated his rights. Moreover, Count II is fundamentally infirm because it is a "freedom of speech" claim without any allegation of state action. Whether Galette's freedom of speech claim is grounded in the Florida Constitution, the Virginia Constitution, or the U.S

Constitution, it cannot survive without a credible allegation of state action. *See, e.g., Traylor v. State*, 596 So. 2d 957, 963 (Fla. 1992) (Florida's Declaration of Rights protects individuals "from the unjust encroachment of *state authority*" (emphasis added)); *Coward v. Wellmont Health Sys.*, 812 S.E. 2d 766, 770 n.4 (Va. 2018) ("Constitutional torts . . . can only be asserted against state actors."); *Nat'l Broad Co., Inc. v. Commc'ns Workers of Am.*, 860 F.2d 1022, 1024 (11th Cir. 1988)) (the First Amendment does "not apply to private parties unless those parties engaged in activity deemed to be 'state action.'"). Galette's recitations of the phrase "deprivation of right under color of law" is insufficient to satisfy his pleading burden or to place Defendants on notice as to how their conduct could be considered state action. ECF No. [1] ¶ 56.

Although Count II's infirmities are significant, the Court cannot conclude that they are insurmountable. *See Wooden*, 756 F. App'x at 953. Accordingly, Count II is dismissed with leave to amend.

### 3. Count III

Count III of Galette's Complaint alleges a violation of Article 49, Section 1 of the CBA, which prohibits "discrimination in any form against any player . . . because of race[.]"[3] ECF No. [29-2] at 303. The CBA requires arbitration of "[a]ny dispute . . . involving the interpretation of, application of, or compliance with any provision of [the CBA]." *Id.* at 273 (Art. 43 § 1). Defendants argue that the CBA's arbitration provision requires Count III to be arbitrated. ECF No. [15] at 13.

"Employees claiming breach of a collective bargaining agreement . . . are bound by that agreement's terms providing a method for resolving disputes between them and their employer." *Mason v. Cont'l Gr., Inc.*, 763 F.2d 1219, 1222 (11th Cir. 1985); *see also DelCostello v. Int'l Bhd.*

---

[3] Although not attached to Galette's Complaint, the CBA is indisputably central to Count III and its authenticity is uncontested. *Rosen v. J.M. Auto Inc.,* No. 07-cv-61234, 2008 WL 9901501, at *5 (S.D. Fla. Mar. 6, 2008). Accordingly, the Court considers the CBA in the rendering of this decision without converting Defendants' MTDs into motions for summary judgment. *See id*.

*of Teamsters*, 462 U.S. 151, 163 (1983) ("[A]n employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement.").

Galette has offered no cognizable legal argument as to why his claim of breach of the CBA is not subject to the CBA's mandatory arbitration provision. The Court agrees with Defendants that Count III is subject to dismissal. *See, e.g., Kivisto v. NFLPA*, 10-cv-24226, 2011 WL 335420 (S.D. Fla. Jan. 31, 2011) (dismissing action when plaintiff's claims were subject to mandatory arbitration). Given that any claim alleging a breach of the CBA must be arbitrated, the Court concludes that amendment of Count III would be futile. *See Wooden*, 756 F. App'x at 953. Accordingly, Count III is dismissed without leave to amend.

**IV.   CONCLUSION**

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The First Motion to Dismiss, **ECF No. [15]**, is **GRANTED IN PART AND DENIED IN PART**.

2. The Second Motion to Dismiss, **ECF No. [24]**, is **GRANTED IN PART AND DENIED IN PART**.

3. The Third Motion to Dismiss, **ECF No. [29]**, is **GRANTED IN PART AND DENIED IN PART**.

4. The Complaint, **ECF No [1]**, is **DISMISSED**. Galette has leave to file an Amended Complaint **no later than January 18, 2023**. That Amended Complaint shall:

    a) Cure the deficiencies discussed above with respect to Counts I and II; and

    b) Omit Count III.

5. Failure to comply with this Order will result in *sua sponte* dismissal of this case without further notice.

6. Galette's Motion for Reconsideration, **ECF No. [37]**, is **DENIED AS MOOT**.

Case No. 22-cv-61565-BLOOM/Otazo-Reyes

7.  Galette's Motion for Summary Judgment, **ECF No. [40]**, is **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, on December 29, 2022.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

AlphaLives@yahoo.com